*In re* NORMAN EUGENE THOMAS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMAN EUGENE THOMAS, Defendant-Appellant.)

Third District   No. 77-15

Opinion filed January 17, 1978.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

William K. O'Connor, State's Attorney, of Cambridge (Larry S. Vandersnick, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by Norman Eugene Thomas, a minor, from an order entered by the circuit court of Henry County which committed him to the Illinois Department of Corrections.

The factual situation which ultimately resulted in the minor's commitment to the Illinois Department of Corrections had its inception when on June 12, 1974, a petition was filed by the People which requested that the minor be adjudicated a ward of the court. The petition alleged that the minor was 13 years of age and had committed the offense of theft. An adjudicatory hearing was held on September 13, 1974, during which the evidence established that the minor had participated with two other individuals in the theft of $921.88. There is some discrepancy in the record

as to where this theft occurred but such discrepancy is not material since the minor both prior to and during the hearing admitted his participation in the offense and in fact assisted the police in recovering the proceeds of the theft. The trial court adjudged the minor delinquent and made him a ward of the court. The director of court services was appointed guardian and the minor was returned to his mother's home subject to supervision of the director.

On October 8, 1974, a dispositional report was filed in which a number of previous thefts in which the minor participated were noted. No formal action had been taken by the People in regard to these thefts; however, three days prior to the adjudicatory hearing, the minor was involved in the theft of approximately $200 from a liquor store. A detention hearing was held on September 11, 1974, regarding this offense and the minor was ordered to be detained. The dispositional report further stated that the minor had problems at school which were primarily the result of the minor's propensity for being a truant.

On October 5, 1974, the first of a number of dispositional hearings was held and the minor was placed with the Youth Farm, his guardianship remaining in the county director of court services.

A second dispositional hearing was held on May 16, 1975, at the conclusion of which the minor was returned to his mother's home. On December 30, 1975, the minor was again ordered detained and a dispositional hearing was scheduled for January 13, 1976. Prior to this hearing a dispositional report was filed which noted that the minor had progressed quite well at the Youth Farm and as a consequence had been released on May 16, 1975; however, subsequent to his release he had been charged with disorderly conduct but said charge had been dismissed. The report noted further truancy problems and finally that he had been taken into custody on December 30, 1975, for his alleged involvement in the theft of money from a liquor store on December 29, 1975.

The evidence adduced at the dispositional hearing established that the minor defendant was in the liquor store at the time of the alleged theft, but taking the stand in his own behalf he contradicted the testimony of an employee of the store that he had taken money from the cash register. At the conclusion of the hearing the trial court returned the minor to the Youth Farm.

On July 7, 1976, a further dispositional report was filed in which it was stated that the Youth Farm had recommended that the minor be returned to his mother's home but subject to supervision. This report noted that the minor had applied for summer employment and noted that while at the Farm he had been elected treasurer of the student council, then secretary, and eventually mayor. The report was laudatory of the minor's conduct and progress while at the Youth Farm. On July 9, 1976, the minor was

returned to his mother's home subject to the supervision of the Director of Probation.

On December 16, 1976, notice of a further dispositional hearing was filed. A further report disclosed that the minor, subsequent to his release from the Youth Farm, again became embroiled in disciplinary and criminal problems. Upon returning to school he again had truancy problems and on November 12, 1976, he was apprehended at a grocery store in Kewanee for shoplifting. When apprehended three cartons of cigarettes were found on his person. The minor voluntarily gave a statement to the probation officer regarding this offense and further supplied helpful information to the police of Kewanee concerning drug traffic in the city.

The final dispositional hearing concerning the minor was held on December 28, 1976. During this hearing evidence established that the November 12 shoplifting incident was the minor's only involvement in a crime since his release from the Youth Farm, however, between September 9 and December 28 of 1976 he had been absent from school for a total of 78 days, of which 37 absences were unexcused. The minor defendant's mother testified that her son had been doing well at home but had associated with two individuals who exerted a bad influence on him. The mother further testified that her son had a part time job which earned him approximately $25 per week and that she wanted him to remain with her.

At the conclusion of the dispositional hearing the trial court ordered that the minor, Norman Eugene Thomas, be committed to the Juvenile Division of the Illinois Department of Corrections. From this order this appeal has ensued.

The first issue presented by the minor is his contention that the juvenile court acted without statutory authorization and deprived him of due process of law by committing him to the Juvenile Division of the Department of Corrections. In support of this broad contention the minor asserts that the trial court acted without statutory authorization when it ordered him returned to the home of his mother without imposing any conditions upon his release except to place him under the supervision and guardianship of the Henry County Probation Department.

■■ We have set forth a lengthy and detailed recitation concerning the five dispositional hearings which were held by the circuit court of Henry County. Two of these hearings resulted in the minor being returned to the home of his mother and it is true that while he was a ward of the court and supervision was placed in the director of court services, on neither occasion were any conditions imposed upon such release. The pivotal question posed by this contention of the minor is whether it is mandatory for the court to impose conditions upon a minor's release when that

individual is placed on probation. This court in *In re Richards* (1977), ___ Ill. App. 3d ___, made the observation that if a court expects specific activities or conduct on the part of a defendant, the better practice would seem to be to specify the intended conditions. In the case of *Richards* this court, however, concluded that an order in which the trial court retained a minor's wardship but otherwise placed his custody with his parents was a temporary order and specification of terms of probation was not required. (*In re Richards* (1977), ___ Ill. App. 3d ___.) We further upon examination of the pertinent statute, section 5—3 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—3(2)(a)), find the following language:

"§5—3. Probation.) (1) * * *.

(2) The court *may* as a condition of probation or of conditional discharge require that the minor:

(a) not violate any criminal statute * * *." (Emphasis added.)

The statute clearly makes it discretionary with the trial court as to whether or not terms of probation shall be imposed and consequently the trial court did not commit error by not imposing them in the instant case.

The minor-defendant next argues that the dispositional hearing of December 28, 1976, which resulted in his commitment to the Department of Corrections deprived him of due process of law in that it subjected him to incarceration without prior notice of reasons for a change of disposition.

In examining the record in regard to this contention we first note that the dispositional report filed with the trial court was filed six days prior to the scheduled hearing, and it was made available to the minor's attorney at the time of filing and further it set forth the reasons why a change in disposition was being sought.

The Juvenile Court Act provides that no order of commitment to the Department of Corrections shall be entered against a minor before a written report of social investigation, which has been completed within the previous 60 days, is presented to and considered by the court. (See Ill. Rev. Stat. 1975, ch. 37, par. 705—1.) The report referred to by this statutory provision is to include *inter alia* the minor's history of delinquency, criminality or other matters which have been brought to the attention of the Juvenile Court and any other matter the investigating officer deems relevant or the court directs to be included. (See Ill. Rev. Stat. 1975, ch. 37, par. 705—1(3).) Section 5—1(2) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—1(2)) provides that the court shall advise the parents, guardian or responsible relative or their counsel of the factual contents and conclusions of the report and if requested these parties shall be given an opportunity to controvert the contents of the report. Our Criminal Code specifies that the report shall be filed with

the court and shall be opened for inspection by the States Attorney and the defendant's attorney at least three days before the dispositional hearing. See Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—4(a), (b).

■■  In the instant case the trial court's docket entry for December 22, 1976, noted the filing of the original and two copies of the dispositional report which was six days prior to the scheduled dispositional hearing. In the report filed the minor-defendant was given notice of the history of his criminal conduct and in detail was recited his conduct since the date of his last dispositional hearing which had been on July 9, 1976. Specifically, the report stated that since the July 9 hearing the minor had a poor school attendance record and listed each day when he was absent from school and gave the reason, if any, for such absence. The report further set forth the details of the minor's apprehension for the November 12, 1976, shoplifting charge and that he had admitted his guilt as to this charge to Gregg Anderson of the Probation Department.

We consider it pertinent in determining whether the minor had prior notice of the reasons for a change in his disposition that he took the stand in his own behalf and the following colloquy ensued:

"Q. Would you state your name, please?

A. Norman Thomas.

Q. Are you the juvenile in this case?

A. Yes.

Q. Have you looked over the further dispositional court report?

A. Yes, I have.

Q. Prepared by Mr. Anderson?

A. Yes.

Q. In that report, as you will recall, it states that the Kewanee Police Department took you in custody on December 30, 1975 for alleged involvement in a theft of money from a cash register on December 28, 1975. Do you recall that in the report?

A. Yes.

Q. Did you steal or take any money from a cash register on that date?

A. No, I did not."

This colloquy clearly establishes that the dispositional report adequately advised the minor-defendant of the reasons for the proposed change of disposition and therefore did not deny him due process of law.

The minor-defendant also contends that the final dispositional hearing deprived him of due process of law in that it subjected him to incarceration without a hearing on whether he had violated a law or court order.

■■  We find no merit in this contention for two reasons. First, the

hearing of December 28, 1976, was not a probation revocation hearing, but a further dispositional hearing which is entirely proper and authorized by section 5—2(3) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—2(3)); and, secondly, the trial court after hearing the evidence did find that the minor-defendant had violated the law. This finding is evidenced by the following remarks of the trial judge concerning the minor, made at the close of the case:

> "* * *[Y]ou may correct me if I am wrong. A little over a month ago he was involved in a misdemeanor theft which he apparently has admitted his participation in. In addition, thereto, there are numerous absences from school."

As to the first broad contention of the minor-defendant we can only conclude that the final dispositional hearing did meet the statutory standards and did provide him with the requirements of due process of law.

Lastly, the minor-defendant contends that the trial court's decision to commit him to the Department of Corrections was against the manifest weight of the evidence and contrary to statutory intent.

■■  Underlying this contention the minor argues that the record does not establish his mother as unable, unfit or unwilling to care for, protect, train or discipline him and further that the commitment ordered by the trial court was not in his best interests or the best interests of society.

Section 5—1(5) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—1(5)) provides:

> "When the commitment to the Department of Corrections is ordered, the court shall state the basis for selecting the particular disposition, except that when the court deems it in the best interests of the delinquent minor not to state in his presence the basis for the disposition, the court shall prepare such a statement for inclusion in the record."

In the instant case the trial judge did sign a dispositional order which contained findings that placement under section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—7) would not serve the best interests of the minor. Section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—7) provides for placement with a suitable relative, placement under the guardianship of a probation officer, commitment to an agency or some licensed training school. The trial court specifically found that the minor's parent was unfit, unable or unwilling to care for, protect, train or discipline the minor. The docket entry for the dispositional hearing made specific reference to the dispositional order as noted by the words "See order." We consider such a procedure to be in compliance with the requisite statutory provisions

pertaining to the commitment of a juvenile to the Department of Corrections and therefore the commitment order was neither contrary to statutory intent nor against the manifest weight of the evidence.

The record further discloses that while the minor-defendant had been in the custody of his mother he was involved in eight thefts and had developed a serious school truancy problem. With this pattern of behavior we cannot agree with the minor that the trial court's order committing him to the Juvenile Division of the Department of Corrections was against the manifest weight of the evidence.

■■ We further find no merit in the argument that the trial court failed to consider placement alternatives before entering the order of commitment. Whether the trial judge must consider placement alternatives we need not decide since in the instant case such alternatives were considered as is illustrated by the trial judge's remarks which were as follows:

"He [the minor] has * * * been twice at the Peoria Youth Farm and, apparently, hasn't learned anything from that. * * *

So many times he's been again released to his mother in hopes and expectations that he would adjust and would abide by the rules of the free community, but that hasn't happened here."

From the record it is abundantly clear that the trial court and the probation authorities of Henry County were pillars of patience and for a long period of time tried again and again to rehabilitate the minor without taking the ultimate step of committing him to the Department of Corrections. The latter step was made after all previous efforts had failed. The trial court's decision can in no way be interpreted as being against the manifest weight of the evidence or contrary to statutory intent.

For the reasons stated the order of the circuit court of Henry County committing the minor-defendant to the Juvenile Division of the Illinois Department of Corrections is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.