*In re* M.D.B., a Minor—(The People of the State of Illinois, Petitioner-Appellee, *v.* M.D.B., Respondent-Appellant).

Second District   No. 83—139

Opinion filed January 12, 1984.

G. Joseph Weller, Josette Skelnik, and Kathleen J. Hamill, all of State Appellate Defender's Office, of Elgin, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, M.D.B., a minor, appeals from an order committing him to the Department of Corrections. A petition for adjudication of wardship was filed against the minor-respondent, M.D.B., in which it was alleged that the minor was delinquent due to his involvement in four incidents of burglary and theft and one of residential burglary.

The cause proceeded to a hearing at which, after conferring with his appointed counsel, the minor waived his right to a preliminary hearing and admitted to the allegations set forth in the petition. Thereupon the court properly admonished the minor regarding his rights and the sanctions which could be imposed upon him. The State then presented a factual basis for the minor's admissions, which the

minor stated was accurate. Thereafter, the minor was found to be delinquent and made a ward of the court.

A dispositional hearing was had on the instant cause. Prior to the hearing, the court had been furnished with a social investigation report on the minor and a written psychiatric evaluation of him by Dr. Marvin Ziporyn. Neither the State's Attorney nor counsel for the minor called any witnesses nor offered additional evidence at the hearing. In its argument, the State urged the court to place the minor in the Department of Corrections. The minor's counsel then made the following remarks on behalf of his client:

"THE COURT: Mr. Rodkey?

MR. RODKEY: Well, your Honor, I really can't argue too much against that because the minor was having problems getting involved in some pretty heavy matters here, it was criminal conduct, but he also was just not attending school on a regular basis either and so it seems to me that when he gets these authority problems worked out that he just hasn't been functioning very well, he does need good protection and help and I think that he will get it, we really don't have any facilities to handle somebody with his problems, so I think that under the circumstances [the Department of Corrections] is probably the best solution."

The minor was then committed to the Department of Corrections. The court also filed a written "Basis for Commitment of Minor" which concluded as follows:

"Based upon the testimony heard at the Dispositional Hearing and on the contents of the social history and the psychiatric evaluation submitted to the court, the minor needs a structured and rehabilitative setting that can best be supplied by the Department of Corrections. The community resources and facilities are unavailable to this minor. The minor has both a history of delinquency and as such presents a threat to both persons and property. The best interest of the minor and the public requires the minor be committed to the Department of Corrections, Juvenile Division, State of Illinois."

Two issues are raised in this appeal:

(1) Whether there is a record basis for the court's finding that the minor's parents are unable to care for, protect, train and discipline him and that the best interests of the minor and society would not be served by placing him pursuant to section 5—7 of the Juvenile Court Act.

(2) Whether the minor received ineffective assistance of coun-

sel at the dispositional hearing and is entitled to a new dispositional hearing with different counsel.

■ The Juvenile Court Act provides that a minor may be committed to the Department of Corrections only if the court finds that (a) his parents are unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and (b) the best interest of the minor and the public will not be served by placement under section 5—7 of the Act (Ill. Rev. Stat. 1981, ch. 37, par. 705—10(1)). The basis of the respondent's appeal is that the evidence presented at the dispositional hearing did not sustain the court findings mandated by section 5—10(1) of the Act and that respondent was therefore improperly committed to the Department of Corrections. The evidence at issue consisted of two written reports, namely, the required social investigation report (Ill. Rev. Stat. 1981, ch. 37, par. 705—1(1)) and a psychiatric evaluation by Dr. Marvin Ziporyn.

With respect to subsection (b) of section 5—10(1) cited above, respondent claims that neither the social investigation report nor the psychiatric evaluation mentioned any placement or program alternatives to the Department of Corrections and because of this deficiency the court could not have given fair consideration to alternative placement dispositions under section 5—7 of the Act. The respondent contends that the court's decision that the minor's and society's best interests would not be served by a section 5—7 disposition lacked a sufficient basis in fact.

In support of respondent's argument is the fact that the instant case was the minor's first appearance in juvenile court and probation or placement had never been tried. Nevertheless, the respondent concedes that very unusual circumstances could have furnished a basis for the court's findings. It is our conclusion that the record of this case reveals that both unusual circumstances existed and that alternative placements were considered by the court when reaching its decision of commitment to the Department of Corrections.

■ It is well established that it is the function of the trial court to determine the dispositional order to be entered and the decision will not be disturbed unless there is an abuse of discretion demonstrated. (*In re C.O.* (1979), 73 Ill. App. 3d 369, 373, citing *In re Wilson* (1976), 40 Ill. App. 3d 619, 622.) Also, the statute gives the juvenile court wide discretion in determining an appropriate disposition. *In re Scott* (1978), 62 Ill. App. 3d 367, 370.

■ At the adjudicatory hearing the court expressly admonished the minor that among the possible alternative dispositions were the

Department of Corrections, probation or supervision. At that time the court also warned that the allegation of residential burglary was an offense for which an adult would receive a mandatory prison term and be denied probation, a fact which the court said would carry much weight in determining a disposition in the present case.

The record of the dispositional hearing indicates that the court was well aware that the instant proceeding was the minor's first appearance in court and that under those circumstances the Department of Corrections is rarely a first consideration before any other alternative. The court then proceeded to specifically enumerate the factors which weighed heavily against the probation alternative. Among the factors considered by the court were the minor's expressed negative attitude toward probation, the number and seriousness of the offenses, especially that of residential burglary, the minor's attitude improvement since his stay at the Department of Corrections, the fact that the minor continued his truancy from school even after his knowledge that the petition had been filed, the absence of any facility other than the Department of Corrections equipped to handle the minor's specific needs as he perceived them, and the realization that in less than two years the minor would be an adult possibly facing a penitentiary sentence for such offenses.

The court's written basis for commitment supplemented the above-stated factors with conclusions based on evidence adduced first from a school guidance counselor's report indicating poor behavior and social skills, verbal threats to students and staff and truancy on a regular basis for the entire year; second, from the social investigation report indicating among other things the minor's desire to be dead; and third, the psychiatric evaluation by Dr. Ziporyn stressing the need for a structured setting and close control to offset the strong likelihood of the commission of further criminal offenses and of destructive behavior to the minor, himself, as well as the property and persons of others. The court again expressed its awareness that at present the only existing facility which could meet the needs and best interests of the minor and the public was the Department of Corrections. Thus, contrary to respondent's allegation, the record reveals that the alternative disposition of probation was properly considered by the trial judge in rendering the dispositional order. It is logical to assume that a juvenile court, a juvenile probation officer and a correctional facility psychiatrist are well aware of possible alternative placements. It is to be noted that the judge need not enumerate all possible alternatives when making a disposition (*In re S.R.F.* (1980), 80 Ill. App. 3d 738), and that the remarks of the trial judge can illustrate a consideration

of alternatives (*In re Thomas* (1978), 56 Ill. App. 3d 587, 594).

A review of the investigation report indicates a basis for the doubt expressed therein by the probation officer when the alternative of probation was considered. To be noted is the fact that the probation officer expressed recognition that the present case was the minor's first appearance in a juvenile court for delinquency and that a consideration of probation was in order. Because of these concerns, the probation officer recommended a psychiatric evaluation by Dr. Ziporyn to aid in the proper disposition of the case.

The psychiatric report indicated that the minor suffered from severe psychopathology in that he was operating at the boundary line of panic and under stress could seriously attempt to harm himself and others. The pathology was described as being so great that extreme consequences could occur unless the condition was remedied as soon as possible before further magnification of the problem. Because of the seriousness of the case, Dr. Ziporyn stated that he did not feel that the minor could be successfully treated on an outpatient basis. Respondent argues that Dr. Ziporyn did not mention any alternative placement. Such a discussion would have been moot, however, since it was understood that no other alternative placement existed which could afford the therapy recommended other than on an outpatient basis, which was strongly discouraged.

The respondent also takes issue with the court's finding under section 5—10(1) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 705—10(1)) that the minor's parents were unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so. He argues specifically that the mother attributed her son's problems to her diminished time at home with him because of her work schedule and contends that this was certainly a financial circumstance. Although the record does not state whether working the third shift was by choice or compulsory, since the father was unemployed, the mother's working some shift appeared to be an economic necessity. It is also true, as respondent contends, that the minor's father and his parenting abilities are not discussed. Nevertheless, if the court relied heavily on both the social investigation report and the psychiatric report which indicated that the minor had a good deal of resentment against his mother and that she was the cause of his general resentment of authority, that the minor's older sister had been imprisoned on several occasions, that a brother was in trouble with the law and that the minor stole from his family, the court could have reasonably concluded from the evidence that increased time spent with the family in the

home would have been more of a disadvantage than an advantage to the minor, a finding not connected in any way with financial circumstances. The minor's apparent progress during his stay at the Department of Corrections could have reinforced this view.

Although commitment is to be used only when less severe placement alternatives would not be in the best interests of the minor and the public (*In re Stead* (1978), 59 Ill. App. 3d 1012, 1014), a juvenile court may consider a variety of factors such as prior arrests (*In re Seibert* (1975), 29 Ill. App. 3d 129), station adjustments or curfew violations (*In re Sneed* (1976), 38 Ill. App. 3d 1041, 1042), and the social investigation (*In re Stead* (1978), 59 Ill. App. 3d 1012, 1014) in determining whether to commit to the Department of Corrections. Although the court must consider the diagnostic examination report, it does not have to accept the recommendations. (*In re C.O.* (1979), 73 Ill. App. 3d 369, 372.) In *In re C.O.*, the court rejected the Department of Corrections' recommendation not to commit the minor there because the judge could see no realistic alternative. In the present case, the facts also strongly suggest that the court accepted the recommendation of the reports for lack of a realistic alternative.

A factual situation somewhat similar to the present case is found in the case of *In re Young* (1978), 63 Ill. App. 3d 897. The minor had no prior delinquency adjudications, but had a series of station adjustments involving serious offenses. The minor's home situation revealed that other children in the family were in trouble with the law. Although the probation officer recommended probation, the trial court rejected this recommendation and found that the minor's best interest required his commitment to the Department of Corrections.

We believe that contrary to the respondent's argument, the record of his case reveals that the court's decision to commit the minor to the Department of Corrections for the purpose of intensive therapy in a highly structured environment was rendered with due consideration of other alternative placements and the ability of the parents apart from financial considerations to care for the minor. The courts have regularly reaffirmed the fact that delinquency proceedings are protective, not penal in nature. The purpose of the Juvenile Court Act is not to punish but to correct and rehabilitate. (*In re Dow* (1979), 75 Ill. App. 3d 1002; *In re Beasley* (1977), 66 Ill. 2d 385; *In re Armour* (1974), 59 Ill. 2d 102.) The court in the present case did not act contrary to statutory intent.

The minor contends he did not receive effective assistance of counsel at the dispositional hearing and is, therefore, entitled to a new dispositional hearing with different counsel.

■ In order to successfully claim incompetence, it must be shown that counsel's performance amounted to actual incompetence which produced substantial prejudice without which the outcome would probably have been different. (*People v. Royse* (1983), 99 Ill. 2d 163.) Many cases reveal that mere errors in judgment, discretion and unsuccessful trial tactics, though perhaps relevant to some extent, could not necessarily be said to deprive the defendant of a fair adjudication of his case. Neither is the fact that, in the light of hindsight, another attorney might have acted differently, a necessary indication of counsel's incompetence. (*People v. Baer* (1976), 35 Ill. App. 3d 391; *People v. Witherspoon* (1973), 55 Ill. 2d 18.) Those inadequacies which would amount to incompetence must be of such weight as to preclude the trier of fact from reaching a fair and impartial verdict. Furthermore, the determination of incompetence must be based on the totality of counsel's conduct viewed against the particular facts and circumstances of each case. The entire record must be considered rather than a narrow focus on isolated instances occurring during the course of the trial. *People v. Williams* (1981), 94 Ill. App. 3d 241; *People v. Talley* (1981), 97 Ill. App. 3d 439.

Even though juvenile proceedings have been characterized as civil in nature, certain due process safeguards normally associated with criminal proceedings have been extended for the protection of juveniles. (*In re S.R.H.* (1983), 96 Ill. 2d 138, 144; *In re Beasley* (1977), 66 Ill. 2d 385, 390.) Among these is the right to counsel as found in the fourteenth amendment to the United States Constitution. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) The right to counsel is specifically included in the Juvenile Court Act. (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(1).) Several courts have made reference to section 1—20(1) and have determined that implicit within the right to counsel is that such representation be effective (*In re Johnson* (1981), 102 Ill. App. 3d 1005, 1011), and that effective counsel entitles the individual to undivided loyalty of the attorney. *In re Lackey* (1979), 71 Ill. App. 3d 705, 707, *aff'd sub nom. People v. Lackey* (1980), 79 Ill. 2d 466.

In the present case, respondent contends that his appointed counsel presented no evidence in his behalf, no evidence regarding the fitness of his parents to care for him, failed to bring alternative dispositions to the trial court's attention, concurred in the recommendations of the State's Attorney and did not afford him the opportunity to speak on his own behalf. Because of these omissions respondent claims that his appointed counsel breached his duty to protect respondent's best interests and that as a result he was denied his due

process right to effective assistance of counsel. He asks the court to appoint new counsel and grant him a new dispositional hearing.

■■ ■ A review of the dispositional hearing substantiates respondent's claim of passive representation by his appointed counsel, the most extreme example being counsel's complete concurrence with the State's Attorney's recommendation for commitment to the Department of Corrections. Certainly counsel was not required to make losing objections in order to provide effective representation (*People v. Johnson* (1970), 45 Ill. 2d 501) nor did he have a duty to manufacture a defense when none existed (*People v. Greenlee* (1976), 44 Ill. App. 3d 536). Moreover, the record does not support the conclusion that counsel's failure to call any witnesses in respondent's behalf necessarily deprived him of beneficial testimony.

If this court perceived the role of respondent's counsel as representing the best interests of the minor by arguing against commitment to the Department of Corrections at any cost, despite his personal belief that the goals of the Juvenile Court Act could best be served by such commitment, rather than any other alternative, then a finding of actual incompetence must lie due to counsel's concurrence with the State's Attorney's recommendations. However, to satisfy the *Royse* standard, the incompetence shown must have produced substantial prejudice without which the outcome would probably have been different. For the reasons stated earlier in this opinion, namely, the court's awareness of alternative possibilities and its statement of factors leaning heavily against probation grounded in its heavy reliance on the social investigation report and psychiatric report, we conclude that even if respondent's attorney was incompetent, it is quite unlikely that the outcome of the dispositional hearing would have been different. See *People v. Tucker* (1981), 99 Ill. App. 3d 606, 613.

For the reasons stated, we find sufficient record basis to uphold the trial court's disposition of the respondent to the Department of Corrections.

Applying the *Royse* standard, we do not grant a new dispositional hearing with different counsel because there was no substantial showing of prejudice which would support the conclusion that the outcome of the dispositional hearing probably would have been different.

The judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.