Douglas FLOOD, Plaintiff,

v.

Michael LANE, et al., Defendants.

No. 85 C 2111.

United States District Court,
N.D. Illinois, E.D.

June 10, 1986.

Supplemental Opinion July 2, 1986.

Mark J. Heyiman, George N. Tobia, Senior Law Student, Edwin F. Mandel, Chicago, Ill. for plaintiff.

Paula Giroux, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Douglas Flood ("Flood") has sued Director Michael Lane ("Lane") and Deputy Director James Irving of the Illinois Department of Corrections ("DOC"), Superintendent John Platt of the Joliet, Illinois Youth Center, Superintendent Glenda Montgomery of the St. Charles, Illinois Youth Center, Chairman Paul Klincar ("Klincar") of the Illinois Prisoner Review Board and Director Gordon Johnson ("Johnson"), Deputy Administrator Ronald Jennings and Supervisor Carole Farmer ("Farmer") of the Illinois Department of Children and Family Services ("DCFS") under 42 U.S.C. § 1983 ("Section 1983"), asserting various violations of Flood's constitutional rights stemming from his custody in juvenile correctional facilities. All defendants have now moved under Fed.R. Civ.P. ("Rule") 56 for summary judgment. For the reasons stated in this memorandum opinion and order, their motion is granted in part and denied in part.

### Facts [1]

On February 8, 1982 Flood was adjudicated delinquent and placed in DOC custody (¶ 8). DOC then sent Flood to the St. Charles Youth Center and later transferred him to the Joliet Youth Center (¶¶ 9–10).

On November 12, 1982 DOC mailed a "Notice of Eligibility for Parole Considera-tion" (P. Ex. A) to the Cook County Juvenile Court. Nonetheless Flood remained in custody (¶ 23). In the following months DOC attempted unsuccessfully to find post-parole placement for Flood (Farmer Aff. ¶ 3). In September 1983 DOC initiated a neglect petition, and Flood then became a ward of DCFS (*id.*).

On January 5, 1984 DCFS placed Flood in Chapin Hall, a private youth home (¶ 25). In May 1984 Flood returned to the St. Charles Youth Center (¶ 26). On December 7, 1984 DOC prepared another "Notice of Eligibility for Parole Consideration" (¶ 28). On April 18, 1985 DOC released Flood to the Kaleidoscope Supervised Independent Living Program (Farmer Aff. ¶ 9). Nonetheless Flood remains subject to the jurisdiction of DOC and DCFS until the expiration of his parole term. Flood now challenges defendants' refusal to release him without first obtaining a post-parole placement.

### Defendants' Contentions

Defendants argue in support of their summary judgment motion:

1. Flood's claim for injunctive relief is moot because he has already obtained release on parole.

2. All defendants are entitled to qualified good-faith immunity because they did not violate any "clearly established" constitutional rights.

3. Klincar is absolutely immune from suit.

4. Flood has failed to establish the necessary direct personal involvement of Lane and Johnson.

5. In any event Flood can recover only nominal damages.

Because each of those contentions poses discrete issues of law, this opinion is somewhat more extended than the brief and

---

1. Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (a proposition most recently repeated in *McGraw Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir.1986)). For that purpose this Court must view the evidence in the light most favorable to the nonmovant—in this case Flood. *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). Here there is no controversy as to many of the allegations in the Complaint, citations to which will simply take the form "¶ —."

straightforward factual recital might have suggested.

### Mootness

Flood counters defendants' mootness argument with two assertions:

1. There is a reasonable expectation he will face the same allegedly wrongful conduct again.

2. Collateral consequences stemming from his incarceration prevent a finding of mootness.

Those contentions must be evaluated in terms of the standards stated in *United States v. Peters,* 754 F.2d 753, 757–58 (7th Cir.1985) (citations omitted):

Moot questions are not justiciable and courts do not rule on such questions to avoid issuing advisory opinions. A case is not moot, however, where even though the factual controversy is over, the case involves an order "capable of repetition, yet evading review."...

Two conditions must be met to avoid mootness: "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and there was a reasonable expectation that the same complaining party would be subjected to the same action again."

Flood Mem. 7 points out Flood remains under the control of both DOC and DCFS until he turns 21 (he is now 19). Hence Flood insists he remains subject to the challenged parole procedures and is thus entitled to injunctive relief prohibiting the use of those procedures to determine his eligibility for parole.

On that score Flood relies on *Vitek v. Jones,* 445 U.S. 480, 486–87, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980), which permitted a constitutional challenge to a transfer from a prison to a mental hospital without a hearing. Although Jones had initially obtained his release on parole, he later violated his parole and was put back in prison. There he again faced an immediate threat of transfer under the same procedures he had attacked. Accordingly the Supreme Court found his request for injunctive relief prohibiting a new transfer was not moot.

But Flood still remains free on parole. To bring the challenged parole procedures into play, he must first violate his parole and be reincarcerated. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) teaches that course of events is too speculative to support a "reasonable expectation" Flood will again face the parole procedures he has attacked. *O'Shea, id.* at 496–98, 94 S.Ct. at 676–77. (emphasis in original) rejected similarly contingent claims under Article III's "case or controversy" requirement:

Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners....Apparently, the proposition is that *if* respondents proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture.

\* \* \* \* \* \*

Similarly, respondents here have not pointed to any imminent prosecutions contemplated against any of their number and they naturally do not suggest that any one of them expects to violate valid criminal laws. Yet their vulnerability to the alleged threatened injury from which relief is sought is necessarily contingent upon the bringing of prosecutions against one or more of them. Under these circumstances, where respondents do not claim any constitutional right to engage in conduct proscribed by

therefore presumably permissible state laws, or indicate that it is otherwise their intention to so conduct themselves, the threat of injury from the alleged course of conduct they attack is simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court.

■ In precisely the same way, Flood's claim for injunctive relief rests on mere speculation he will (1) violate his parole and (2) return to custody. That does not establish a "reasonable expectation" Flood will be subjected to the same alleged violation of his rights. See also *Trotter v. Klincar,* 566 F.Supp. 1059, 1061–62 (N.D. Ill. 1983).

Flood nonetheless contends "collateral consequences" stemming from his placement in custody prevent a finding of mootness. *Sibron v. New York,* 392 U.S. 40, 50–58, 88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917 (1968) makes clear that service of a full sentence does not bar an appeal or a habeas corpus petition if the petitioner may in fact suffer adverse "collateral consequences" because of the underlying conviction. Flood, however, does not challenge his underlying adjudication as a delinquent. Rather he attacks defendants' failure to release him immediately after he became eligible for parole. Flood says that longer term of confinement may have extended the end of his supervised parole period, and he posits that possibility as a "collateral consequence" preventing mootness of his claim for injunctive relief.

■ Two flaws defeat that argument. First, an injunction prohibiting future parole determinations under the challenged procedures will not affect the length of Flood's current parole term. Second, Flood's conclusory statements fail to "set forth specific facts" as mandated by Rule 56(e). Flood has submitted no evidence to support his assertion, and he cannot avoid defendants' summary judgment motion on that basis.

Flood's request for injunctive relief is therefore dismissed as moot.[2] That dismissal does not of course preclude Flood from claiming damages for past violations of his constitutional rights, and the rest of this opinion treats with issues (as to both liability and damages) posed by such claims.

*Immunity from Damages*

All defendants next seek insulation from damage liability under the rule of qualified immunity enunciated in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982):

> We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Benson v. Allphin,* 786 F.2d 268, 275–76 (7th Cir.1986) (footnotes omitted) has recently elaborated on that standard:

> Although the Supreme Court has articulated the rule for qualified immunity, it has not fully explained what it means by the phrase "clearly established statutory or constitutional rights." First, it has not specified which court one must look to in determining whether a right is "clearly established," see *Harlow,* 457 U.S. at 818 n.32, 102 S.Ct. at 2738 n. 32. It seems obvious, however, that reliance on Supreme Court decisions alone might be inappropriate (unless they are the only cases ruling on the question), because they are infrequent in comparison to the decisions of the district and appellate courts, and this infrequency could have the practical effect of converting qualified immunity into absolute immunity.
>
> Second, although it has stated that government officials are not "charged with predicting the future course of constitutional law," *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d

---

**2.** Flood's Complaint also seeks declaratory relief. But because declaratory relief also requires a present "case or controversy," defend-ants' mootness argument defeats that claim as well.

288 (1967), the Court has not explained how close the factual correspondence must be between the actions under consideration and the decisions that establish the applicable law. Its decision in *Mitchell v. Forsyth,* — U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), suggests, however, that officials are not required to anticipate the extension of existing legal principles.

\* \* \* \* \* \*

It would appear that, whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability under the *Harlow.* With *Harlow's* elimination of the inquiry into the actual motivations of the official, *see* 457 U.S. at 815–19, 102 S.Ct. at 2736–39, qualified immunity typically casts a wide net to protect government officials from damage liability whenever balancing is required.

Defendants urge their continued incarceration of Flood after he became eligible for parole because he lacked a post-parole placement did not violate any "clearly established" rights. Flood retorts:

1. Farmer Aff. ¶¶ 7 and 9 create a genuine issue of material fact as to whether defendants could have found a post-parole placement for Flood.

2. Flood's custody was "punishment" under *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) and therefore violated his Fourteenth Amendment liberty and due process interests.

3. Defendants' denial of Flood's parole without a hearing violated the Due Process Clause under *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185 (7th Cir.) (per curiam), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

*1. Defendants' Post-Parole Placement Efforts*

▪ Farmer Aff. ¶ 5 says:

5. Prior to and after September 1983, DOC and/or DCFS contacted over 20 private agencies and programs to arrange a placement for Douglas Flood.

But Flood responds Farmer Aff. ¶¶ 7 and 9 create a factual issue on that score:

7. Douglas Flood was placed at Chapin Hall, a home for boys, on January 5, 1984, but was returned to DOC on May 10, 1984 because he pulled a knife on a staff member.

\* \* \* \* \* \*

9. Douglas Flood was accepted into the Kaleidoscope Supervised Independent Living Program on March 19, 1985 and was released from DOC and placed into the program on April 18, 1985.

Flood insists those statements (with inferences in his favor) suggest defendants could have found a post-parole placement for Flood.

There is a short answer: In Rule 56 terms, that factual dispute is not "outcome-determinative" on the issue now being considered. See *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). Flood's lawsuit does not challenge defendants' post-parole placement efforts as less than enthusiastic. Instead Flood claims he should have received parole despite the absence of a post-parole placement. Whether defendants went all-out to locate a post-parole placement for Flood simply has no bearing on whether their refusal to release Flood violated his constitutional rights.[3] Flood's first argument fails.

*2. Flood's Retention in Custody*

▪ Of course a government cannot impose punishment without first providing certain "procedural safeguards." See, e.g., *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 167, 83 S.Ct. 554, 566, 9 L.Ed.2d 644 (1963) ("a prior criminal trial and all its incidents, including indictment, notice, confrontation, jury trial, assistance of counsel, and compulsory process for obtaining witnesses"). That however begs the question, for *In re M.D.B.,* 121 Ill.App.3d 77, 83, 76

---

3. This issue is examined from a somewhat different perspective under "Measure of Damages."

Ill.Dec. 580, 585, 458 N.E.2d 1380, 1385 (2d Dist.1984) succinctly identifies the non-punitive nature of Illinois' Juvenile Court Act:

> The courts have regularly reaffirmed the fact that delinquency proceedings are protective, not penal in nature. The purpose of the Juvenile Court Act is not to punish but to correct and rehabilitate.

Flood says despite that goal, his retention in custody once he became eligible for parole was "punishment" under *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 2413, 81 L.Ed.2d 207 (1984) (citation omitted):

> Absent a showing of an express intent to punish on the part of the State, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it.]"

Flood challenges, as a violation of his "clearly established" liberty and due process rights, the failure to grant him a jury trial prior to imposing that "punishment."

That challenge too must fail. Defining "punishment" under the *Schall* standard necessarily requires consideration of the surrounding fact situation. And the relevant case law does not suggest a mere continuation of confinement after an adjudicated delinquent becomes eligible for parole automatically transforms the custody into punishment as a "clearly established" matter.

Flood argues his "Notice of Eligibility for Parole" (P.Ex.A) conclusively establishes his continued confinement served no rehabilitative purpose:

> In general it is felt that the Department of Corrections' setting, i.e. particularly at this point in time, will not benefit this youth....It is felt, at this point in time, that Doug has achieved "maximum institutional progress."

> \*　　\*　　\*　　\*　　\*　　\*

> It is generally agreed that Doug's needs are not being met in a correctional facility, whereas a facility for the "develop-

mentally disabled" would seem more apropos.

Flood says at that point his retention in custody became "excessive" and therefore amounted to "punishment" under *Schall.*

Once again Flood fails to point out any "clearly established" standard holding that continued confinement under those circumstances amounts to punishment. At most, Flood's submission establishes defendants no longer held Flood solely for rehabilitation. But Ill.Rev.Stat. ch. 37, ¶ 701–2(1) makes clear another purpose of Illinois' Juvenile Court Act is "to secure for [a minor] custody, care and discipline...." Farmer's affidavit establishes Flood lacked an alternative living arrangement. Under those circumstances, Flood's detention appears calculated to serve a legitimate purpose—care of a minor—other than the imposition of punishment.

Finally Flood contends his incarceration was not the "least restrictive means" of providing him with treatment. From that premise Flood reasons defendants must have incarcerated him for punitive purposes.

That contention wholly lacks merit. As already noted, Farmer's affidavit establishes a legitimate justification for continuing to hold Flood. Flood has submitted no evidence to raise a factual issue on that score. And Flood identifies no case law with similar facts holding such confinement "excessive" under *Schall.* Defendants did not violate any "clearly established" right characterizing their conduct as punishment imposed without due process of law. They are therefore immune from damages for that claim.

### 3. *Denial of Parole*

■ Complaint Count III seeks damages for defendants' failure to grant Flood a hearing before denying his parole. Flood invokes *Scott,* 669 F.2d at 1189–90 as establishing his right to such a hearing:

> [T]he Illinois parole release statute...requires the Board to release an inmate who is eligible for parole unless one of

the specified reasons for denial are found to exist.

\* \* \* \* \* \*

In light of these rules, it appears that the Board itself has interpreted § 1003–3–5(c) as requiring a finding that one of the statutory criteria exist before it can deny an eligible inmate his parole. Read in this way, Illinois' parole release statute is no different than the Nebraska statute considered by the Supreme Court in *Greenholtz [v. Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ]. Like Nebraska's it creates a presumption that an eligible inmate will be paroled unless one of the specified grounds for denial is found to exist and, in doing so, provides him with a legitimate expectation of parole entitled to some measure of constitutional protection.

Defendants call on Board's Rule V.A.5 (D.Ex.B) as assertedly negating Flood's constitutional liberty interest:

V. BASIS FOR DENYING PAROLE
In accordance with statute, the Board shall not parole a candidate if it determines that:

A. There is a substantial risk that the candidate will not confirm to reasonable conditions of parole based on one or more of the following factors:

\* \* \* \* \* \*

5. No means of financial support or no place of residence. (Continuance not to exceed six months to seek resolution of problem.)

Their position is puzzling, because by its terms that Rule simply allows for a six-month continuance. It does not indefinitely delay parole to an otherwise eligible parole candidate. In light of *Scott,* Flood has a "clearly established" right to a parole hearing at some point to protect his expectancy of release. Defendants are not entitled to immunity from Flood's due process claim.

*4. Equal Protection Claim*

■ Defendants' blanket qualified immunity defense has thus prevailed as to Complaint Counts I and IV but not Count III. Although neither party has specifically addressed Count II (Flood's equal protection claim), defendants win there as well.

In that count Flood alleges defendants' refusal to consider him for parole impermissibly discriminated between neglected children who lack post-parole placements and other children who can return to the custody of their natural parents. Flood does not allege he is a member of any "suspect class" recognized under equal protection case law. Absent such special classification, to sustain Flood's equal protection claim he must show defendants' classification bears no rational relationship to a legitimate governmental objective. He has not even essayed to do so.

It takes no great exercise of imagination to perceive a rational relationship between defendants' legitimate desire to protect Flood, a minor child, and their decision to retain custody over him. Flood suggests no basis on which defendants' conduct violated any "clearly established" equal protection principles. They are entitled to immunity from Flood's equal protection claim.

\* \* \*

In summary, defendants are entitled to immunity from damages on Complaint Counts I, II and IV. Flood's Count III due process claim has survived that hurdle and moves on to the next stage.

*Defendants' Remaining Contentions*

*1. Klincar's Absolute Immunity*

■ *United States ex rel. Powell v. Irving,* 684 F.2d 494, 496–97 (7th Cir.1982) established absolute Section 1983 immunity for members of the Illinois Prisoner Review Board in their handling of parole decisions. Flood's memorandum gives no answer to that proposition. Board Chairman Klincar is dismissed as a defendant.

*2. Lane and Johnson*

■ Lane and Johnson say Flood has failed to establish their direct personal involvement in the alleged violation of

Flood's due process rights. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981) reconfirmed the established inapplicability of respondeat superior principles to impose Section 1983 liability. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982) briefly states the operative rules:

> To recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendants' personal responsibility for the claimed deprivation of a constitutional right.... However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.

Lane and Johnson have both submitted affidavits (D.Exs.C and D) disclaiming personal involvement in the alleged deprivation of Flood's due process rights. And Flood has provided no facts at all to support a claim Lane or Johnson directed or knowingly consented to a violation of his constitutional rights. As for the other branch of possible liability—"deliberate or reckless disregard" of Flood's rights during his incarceration—Flood says Lane and Johnson have failed to create a policy guaranteeing a juvenile's release when he initially becomes eligible for parole. Flood says Lane and Johnson should have known the absence of such a policy would result in a constitutional violation.

But that theory at most establishes a negligent failure to act. And *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986) has recently overruled *Parratt v. Taylor*, 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981) to hold conduct involving only

lack of due care by state officials does not implicate due process concerns:

> Petitioner's claim in this case, which also rests on an alleged Fourteenth Amendment "deprivation" caused by the negligent conduct of a prison official, leads us to reconsider our statement in *Parratt* that "the alleged loss, even though negligently caused, amounted to a deprivation." *Id.*, at 536–37 [101 S.Ct. at 1913–14]. We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property.

> \* \* \* \* \* \*

> Upon reflection, we...overrule *Parratt* to the extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty or property under the Fourteenth Amendment.

After *Daniels*, mere negligent disregard is inadequate to establish Section 1983 liability. Flood has adduced no facts suggesting Lane and Johnson knew of and ignored Flood's situation (or that of anyone similarly situated) with either "deliberate" or "reckless" disregard.[4] Lane and Johnson also bear no Section 1983 liability to Flood, and they too are dismissed as defendants.

### 3. Measure of Damages

Finally defendants look to *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (citations and footnotes omitted) to limit Flood's recovery to nominal damages for the alleged violation of his procedural due process rights:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized so-

---

4. *Daniels*, 106 S.Ct. at 667 n. 3 and Justice Blackmun's dissent in a companion case (*Davidson v. Cannon*, —— U.S. ——, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986) indicate the Court has not decided whether recklessness or deliberate indifference would suffice to trigger due process

protections (and see *Whitley v. Albers*, —— U.S. ——, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ). But Flood's evidence does not support a finding of recklessness or deliberate indifference, so that issue is not posed here.

ciety that procedural due process be observed...we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.

Defendants say in all events Flood would have been denied parole under Board Rule V (D.Ex.B) because he had no means of financial support and no place to live. Under that "no harm, no foul" approach, Flood could not show actual damages and is therefore restricted to a nominal recovery. *Jaworski v. Rhode Island Board of Regents for Education*, 530 F.Supp. 60, 66 (D.R.I.1981).

Flood's first answer—that defendants have submitted no proof of Flood's financial situation—is unavailing. Under Board Rule V the lack of a place of residence is an independent ground for denying parole—the two elements are stated in the disjunctive.

As to that second and independent ground, it will be recalled Farmer Aff. ¶ 5 reflects DCFS' efforts to place Flood:

> 5. Prior to and after September 1983, DOC and/or DCFS contacted over 20 private agencies and programs to arrange a placement for Douglas Flood.

Those extensive efforts produced only the two possibilities referred to earlier in this opinion (quoting Farmer Aff. ¶¶ 7 and 9). Flood urges that defendants' showing does not conclusively establish Flood had no place to live—that the affidavit fails to negate the possibility Flood himself could have come up with placement alternatives had defendants provided him with a hearing.

But that misperceives the nature of Flood's position once defendants have of-fered evidence in support of their Rule 56 motion. At that stage Flood cannot rest on mere speculation to avoid summary judgment, for he is entitled only to reasonable inferences from the facts actually adduced. What is at issue at this point is not the absence of a hearing (an established fact) but the *existence* of a residence for Flood. On that issue his mere conclusory statements of possibilities, unsupported by "specific facts" as required by Rule 56(e), cannot do the job.

### Conclusion

Klincar, Lane and Johnson are dismissed as defendants. Flood's claims for injunctive relief (and the related prayer for declaratory relief) are dismissed as moot. There is no genuine issue of material fact, and all remaining defendants are entitled to a judgment as a matter of law, as to:

1. their immunity as to each of Flood's remaining claims except his due process claim; and

2. their liability for no more than nominal damages on Flood's due process claim.[5]

### SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

Douglas Flood ("Flood") has moved for reconsideration of this Court's June 10, 1986 memorandum opinion and order (the "Opinion") that granted much of the relief sought by defendants' Fed.R.Civ.P. ("Rule") 56 summary judgment motion. Fortuitously, on a single day last week (June 25) the United States Supreme Court decided three cases that confirm the correctness of the Opinion: *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Memphis Community School District v. Stachura*, —— U.S. ——, 106 S.Ct. 2537, 91 L.Ed.2d 249; and *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265.

---

5. This opinion has not treated with the effect of a nominal damage limitation on the recovery of attorneys' fees under 42 U.S.C. § 1988. That issue is premature in any event, and enlighten-ment may come from the Supreme Court's soon-to-be-issued opinion in *City of Riverside v. Rivera*, No. 85–224 (argued Mar. 31, 1986, see 54 U.S.L.W. 3678).

Flood challenges the Opinion's conclusion that, because he has adduced no evidence of harm flowing from the lack of a hearing, he cannot recover more than nominal damages in any event. As Opinion at 18 pointed out, defendants have shown extensive but unsuccessful efforts to locate a residential placement for Flood, and Flood has tendered nothing whatever to suggest any such placement existed in fact. That situation calls into play each of the newly-issued Supreme Court opinions:

1. Both the *Celotex* majority opinion by Justice Rehnquist[1] and Justice Brennan's more thoughtful parsing of the burdens of production and persuasion under Rule 56 show that Flood's failure to offer anything in the face of defendants' evidence necessarily means no damage verdict (other than for nominal damages) could stand.

2. Both the *Anderson* majority opinion by Justice White and Justice Brennan's dissent confirm that only "justifiable" (54 U.S. L.W. at 4759, —— U.S. at ——, 106 S.Ct. at ——) or "permissible" (*id.* at 4763, ——, 106 S.Ct. at ——) inferences from the record evidence are to be drawn in Flood's favor. That is precisely the standard the Opinion applied, and Flood failed to produce any such inferences to support a finding of compensable damages due to the lack of a hearing.

3. *Stachura* confirms that no measure of damages can be attached to the value of Flood's claimed constitutional right to a hearing as such. It similarly reconfirms the recoverability of only nominal damages in such circumstances, as announced in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

Flood Mem. 5 also urges defendants Lane and Johnson have failed to show a lack of knowledge of claimed facts as to the situation of delinquent minors other than Flood:

> It is inconceivable that Defendants Lane and Johnson are unaware of the fact that

many persons who have been adjudicated delinquent have no family to whom they can be discharged. It is also inconceivable that these Defendants are unaware of the fact that such delinquents remain in juvenile prisons run by Defendant Lane solely because no placements have been located.

But no *evidence* (as contrasted with unsupported statements) suggests the existence of such "facts." Flood's claim of an unconstitutional policy must rest on more than such speculation, and the current teaching of *Anderson* and *Celotex* buttresses the Opinion in that respect as well.

Accordingly Flood is simply wrong in characterizing the Opinion as having misperceived his rights. His motion for reconsideration is denied.

---

1. It is tempting to call Justice Rehnquist's a plurality, rather than a majority, opinion under the odd circumstances of *Celotex*. Justice White's fifth vote does, to be sure, "concur[ ] in the Court's opinion and judgment." But as n. 1 in

Justice Brennan's dissenting opinion points out, Justice White's understanding of the effect of the remand ordered by the Court is quite different from that of Justice Rehnquist.