*In re* A.J.D., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. A.J.D., Respondent-Appellant).

Fourth District   No. 4—87—0167

Opinion filed November 12, 1987.

Daniel D. Yuhas and Patricia G. Mysza, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On December 15, 1986, a petition for adjudication of wardship was filed against the respondent minor A.J.D., alleging he committed the offenses of attempt (robbery) and battery (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 12—3(a)(1)) on November 7, 1986. Following an adjudicatory hearing, the trial court found the allegations of the petition proved and adjudicated A.J.D., age 16, a delinquent minor. Following a dispositional hearing held the same day, March 4, 1987, the trial court adjudged A.J.D. a ward of the court and committed him to the Department of Corrections, Juvenile Division (DOC). The respondent minor appeals, arguing the trial court abused its discretion by committing him to DOC and failed to give consideration to the less drastic alternative of continued probation as recommended by his probation officer and the State.

The underlying petition for adjudication of wardship was based on an incident when the respondent minor and a companion approached a 21-year-old woman near a phone booth at about 10:30 p.m. on November 7, 1986. The young woman testified at the adjudicatory hearing that on the night of the offense she had had an argument with her boyfriend and exited his car about three blocks from the phone booth. She walked to the phone booth, made a call and, as she left the phone booth, was approached by the respondent minor and another young male. According to the woman, the other boy asked her for her purse and she refused to give it to him, whereupon he "punched" her in the face several times. The woman testified she continued to hold her purse, and A.J.D. pushed her from her side or back while the other boy made another attempt to grab her purse and punched her in the face again. The woman testified the boys apparently became discouraged since she did not turn over her purse and they started to walk away.

The woman testified she went back into the phone booth and tried to get an operator and began screaming for the police. She said the boys came back and both began to hit her. She continued to scream and a car finally pulled into the parking lot and two boys ran off.

The woman testified that by this time she had the emergency services at telephone number 911 on the phone, but she was hysterical

and could not talk, so the man in the car got on the phone and reported that the boys were running across the Montgomery Ward parking lot.

Decatur police officer Richard Hazen testified that on November 10, 1986, he spoke to A.J.D. at headquarters after informing him of his rights. Hazen testified A.J.D. named the other person he was with on the night of November 7, admitted they saw a woman in the phone booth, and said the other boy wanted to "mess with her." Hazen said A.J.D. told him the other male approached the woman and grabbed for her purse, the woman kicked the other boy, who then struck her, and the woman then hit A.J.D. and A.J.D. hit her in the shoulder. Hazen said A.J.D. told him he (A.J.D.) hit the woman only once.

A.J.D. took the stand in his own defense. He named the other individual and said they had approached the woman at about 11:15 p.m. on November 7, 1986. A.J.D. testified the other male asked the woman her name and, when she did not tell him, he reached for her purse and she slapped him. A.J.D. testified the other boy then slapped the woman and the woman slapped A.J.D., and A.J.D. hit her: "As she was swinging she turned and I hit her in the arm." According to A.J.D.'s testimony, the other male grabbed for the woman's purse only once, and neither he nor the other male went back to the woman a second time as she had testified.

On this evidence, the court found the allegations of the petition had been proved beyond a reasonable doubt and found A.J.D. a delinquent minor as defined in section 2—2 of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1985, ch. 37, par. 702—2).

At the dispositional hearing held the same day, A.J.D.'s probation officer, Kevin Taylor, testified he had prepared the report and social history in the case. He testified his last contact with A.J.D. had been on September 10, 1986, when the social history in Macon County case No. 86—J—314 was completed. Taylor recommended the minor be made a ward of the court, be placed on a concurrent term of probation with that running in case No. 86—J—314, with the length of that probation being extended by three months to December 5, 1987. Taylor testified the minor had not served any time in detention and said he was not recommending additional hours of community service work because the Probation Plus Program (PPP) was full.

A.J.D.'s mother testified the minor had completed some hours of community service work as ordered as a term of his probation in Macon County case No. 86—J—314, but said he had been scheduled for only a limited number of hours.

The State recommended that the minor be (1) adjudged a ward of

the court and placed on probation until December 5, 1987; and (2) ordered to complete an additional 70 hours' community service through PPP and spend one weekend in detention (based on the seriousness of the offense). Defense counsel stated no objection to the extension of probation but objected to the minor's spending any weekend in detention and argued against ordering additional community service work.

■ The court reviewed the social history of the minor and said it had heard the recommendation of the probation department, the State, and the minor, but agreed with none of them. The trial judge stated in his opinion the situation was so serious he had no other alternative available but the commitment of the minor to DOC, finding this commitment necessary to insure the protection of the public from the consequences of the criminal activity of the delinquent. In coming to this disposition, the judge referred to the minor's prior police contacts. The social history report in the record, filed in case No. 86—J—314(D), showed the following:

| Date | Offense | Case Number | Disposition |
|------|---------|-------------|-------------|
| 9/27/80 | Theft | No. 0091068 | station adjustment |
| 4/8/86 | Criminal damage to property | No. 6040403 | station adjustment |
| 6/11/86 | Criminal damage to property | 86—J—314(D) | 12 months' probation |
| [not specified] | theft (two counts) | 86—J—328(D) [listed in report as pending] | |
| 8/21/86 | Solicitation | [not specified] | [not specified] |

The underlying offense here occurred on November 7, 1986. It is clear that in determining the appropriate dispositional alternative, the trial court may consider a variety of factors, such as prior arrests, station adjustments, or curfew violations. (*In re M.D.B.* (1984), 121 Ill. App. 3d 77, 83, 458 N.E.2d 1380, 1385.) According to the evidence, A.J.D. had had no further police contacts between his questioning on this incident in November 1986 and his adjudicatory and dispositional hearing herein in March 1987. The respondent minor therefore argues the trial court erred in committing him to DOC because the commitment order cut short his recent progress toward rehabilitation. We note the trial court also remarked on (1) the seriousness of the offenses involved in this case, wherein conduct of young people caused not only physical harm but also fear and terror; and (2) what it deemed to be the minor's lack of truth or veracity at the adjudicatory hearing.

On appeal, A.J.D. argues the trial court abused its discretion in ordering his commitment to DOC by concluding the factors underlying

the petition herein were sufficiently serious that it *had no other alternative available* but commitment to DOC; and maintains his commitment to DOC was neither warranted by the evidence nor consistent with the policy objectives of the Act. Respondent minor further argues the commitment of minors to the Department of Corrections, Juvenile Division, is to be used *only* when a less severe dispositional order would not be in the best interest of the minor *and* the public, citing *In re Stead* (1978), 59 Ill. App. 3d 1012, 1014, 376 N.E.2d 689, 690-91, and *People v. Hackman* (1971), 1 Ill. App. 3d 1030, 1032, 275 N.E.2d 488, 490. He maintains the Act thereby requires the trial court to fashion a disposition which would aid in the minor's guidance and rehabilitation in his own home.

Section 5—2(1) of the Act, as in effect at the time of the decisions in *In re Stead* and *Hackman,* read as follows:

"When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections if it finds that (a) his parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, *and* (b) the best interests of the minor and the public will not be served by placement under Section 5—7." (Emphasis added.)

(See Ill. Rev. Stat. 1981, ch. 37, par. 705—10(1).) The language of section 5—10(1) was, however, amended by Public Act 82—973, which provided in pertinent part:

"When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections if it finds that (a) his parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and (b) the best interests of the minor and the public will not be served by placement under Section 5—7; *or (b) it is necessary to insure the protection of the public from the consequences of criminal activity of the delinquent.*" (1982 Ill. Laws 2414, 2428-29, 2432 (eff. Sept. 8, 1982).)

It is this amended version of section 5—10(1) of the Act that governed at the time of A.J.D.'s dispositional hearing.

█ In this context, the trial judge's remarks show the commitment to the Department of Corrections, Juvenile Division, was made pursuant to section 5—10(1)(b) of the Act. (Ill. Rev. Stat. 1985, ch. 37, par. 705—10(1)(b).) In view of the amendment of the statutory language of section 5—10(1) accomplished by Public Act 82—973, we con-

clude the provision added as subsection (b), as well as the legislature's choice of the disjunctive term ''or'' between subsection (a), as amended, and subsection (b) was intended and should be given effect. Accordingly, the trial judge had the authority to commit A.J.D. to the Department of Corrections, Juvenile Division, as necessary to insure the protection of the public from the consequences of criminal activity of the delinquent.

Further, the record does not support A.J.D.'s argument that the court summarily rejected less severe alternatives to commitment to DOC without consideration of the minor's best interests. The evidence was before the trial judge and, absent record evidence to the contrary, we decline to presume the judge failed to consider it. The minor argues the only reason the court gave for ordering his commitment to DOC was that he had committed a serious offense and there was no other alternative available. As stated in *In re M.D.B.* (1984), 121 Ill. App. 3d 77, 81-82, 458 N.E.2d 1380, 1384:

> "[T]he judge need not enumerate all possible alternatives when making a disposition (*In re S.R.F.* (1980), 80 Ill. App. 3d 738[, 399 N.E.2d 1382]), and *** the remarks of the trial judge can illustrate a consideration of alternatives (In re Thomas (1978), 56 Ill. App. 3d 587, 594[, 372 N.E.2d 134])."

The trial court was familiar with dispositional alternatives and rejected them.

This court stated the applicable standard of review in the case of *In re T.A.C.* (1985), 138 Ill. App. 3d 794, 797-98, 486 N.E.2d 375, 378:

> "Section 5—2 of the Juvenile Court Act sets forth the various dispositional alternatives, one of which is commitment to the Department of Corrections. (Ill. Rev. Stat. 1983, ch. 37, par. 705—2.) A trial court may choose as it sees fit, among the various alternatives, and not defer to any particular disposition. (*In re F.L.W.* (1979), 73 Ill. App. 3d 355, 391 N.E.2d 1070.) The trial judge had wide discretion in determining an appropriate disposition, and his decision will not be reversed unless an abuse of discretion is demonstrated. *In re M.D.B.* (1984), 121 Ill. App. 3d 77, 458 N.E.2d 1380."

Applying this standard to the facts of this case, we cannot say an abuse of discretion has been demonstrated.

Accordingly, we affirm.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.